| | |
|---|---|
| MARIE HOCKADAY FAULCON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **ORDER** |

On March 23, 2012, Marie Hockaday Faulcon ("Faulcon") sued Michael J. Astrue, Commissioner of Social Security ("Commissioner"), alleging that the Commissioner wrongfully denied Faulcon's application for Social Security disability insurance benefits and supplemental security income ("benefits") [D.E. 6].[1] Faulcon asks the court to reverse the Commissioner's denial of benefits and order an award of benefits or remand the case for a new hearing. Id. On November 20, 2012, Faulcon moved for judgment on the pleadings [D.E. 26] and filed a memorandum in support [D.E. 26-2]. On December 27, 2012, the Commissioner moved for judgment on the pleadings [D.E. 28] and filed a memorandum in support [D.E. 29]. As explained below, the court denies Faulcon's motion, grants the Commissioner's motion, and affirms the Commissioner's decision.

I.

On April 13, 2010, Faulcon applied for benefits. Tr. 216–18. In her application, Faulcon

---

[1] Astrue has resigned and the court substitutes Carolyn W. Colvin, Acting Commissioner of Social Security, as defendant. See Fed. R. Civ. P. 25(d).

stated that her disability began on March 3, 2009. Id. 216. On July 26, 2010, her claim was denied initially, and again upon reconsideration. Id. 135–38, 149–50. Faulcon requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 12, 2011. See id. 57–92.

At the hearing, where Faulcon appeared with counsel, Faulcon testified that she was working on the production line for Safelite Glass until March 3, 2009, when she injured her left foot. Id. 65–66, 68–69. Faulcon described suffering since then from pain in her left foot, legs, lower back, head, shoulders, and neck. Id. 70–77. She testified that she had received pain treatment since her injury, including spinal surgery to implant a dorsal column stimulator on June 16, 2010. Id. 72–74. She described her lower-back pain as the main reason preventing her from working. Id. 80. She also described suffering from severe headaches almost daily. Id. 79–80. Faulcon has an intelligence quotient ("IQ") of 64, placing her in the range of mild mental retardation. Id. 624. Faulcon also testified that she had been receiving unemployment benefits since September or October 2010. Id. 62–63.

A vocational expert testified that a hypothetical candidate capable of performing unskilled light work with additional restrictions could find jobs that exist in significant numbers in the United States and in North Carolina. Id. 87–88. The expert also testified that a hypothetical individual with the limitations Faulcon claimed, who had to miss more than three workdays per month, would not be able to perform those jobs. Id. 88–89.

On September 21, 2011, the ALJ issued a partially favorable decision. Id. 37. The ALJ determined that Faulcon was under a disability from March 3, 2009, to January 4, 2011, but that as of January 5, 2011, she no longer was disabled. Id. 48, 52. On February 8, 2012, Faulcon timely requested review by the Appeals Council, which denied her request for review. See id. 1–3. Faulcon timely sought judicial review. See 42 U.S.C. 405(g).

2

II.

In reviewing the Commissioner's denial of benefits, a district court is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See id.; Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is evidence that is more than a scintilla but may be somewhat less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When reviewing for substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superceded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997).

In evaluating disability claims, the Commissioner follows a familiar five-step process. The Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in steps one through four. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the process reaches the fifth step, the Commissioner has the burden of proving that the claimant, despite impairments, can perform a job that exists in significant number in the national

3

economy. See id.; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

Here, the ALJ proceeded through the five-step inquiry first for the period from March 3, 2009 through January 4, 2011, and then for the period from January 5, 2011 to the present. For both periods, the ALJ determined that Faulcon had not worked since the onset of her disability on March 3, 2009. Tr. 44. Considering the March 3, 2009 through January 4, 2011 period, the ALJ found that Faulcon had the severe impairments of reflex sympathetic dystrophy of the left foot, lumbar degenerative disc disease, cervical spondylosis with radiculopathy, and borderline IQ. Id. 44–45. The ALJ found that in this time period Faulcon did not have an impairment or combination of impairments that met or medically equaled a listed impairment, but nevertheless she lacked the residual functional capacity to perform her past work or other work. Id. 45–47. Thus, the ALJ found that Faulcon was under a disability for the period from March 3, 2009 to January 4, 2011. Id. 48. Both parties agree that the ALJ correctly made this finding of disability.

Turning to the period from January 5, 2011 to the present, the ALJ found at steps two and three that Faulcon did not have a severe impairment or combination of impairments that equaled a listed impairment. Id. 48–49. The ALJ found that medical improvement occurred as of January 5, 2011, that increased Faulcon's residual functional capacity. Id. 49. The ALJ also found that as of January 5, 2011, Faulcon had the residual functional capacity to perform unskilled light work with a "sit/stand option." Id. 50–51. At step four, the ALJ found that Faulcon could not perform relevant past work. Id. 51. But at step five, relying on the vocational expert's testimony, the ALJ found that considering Faulcon's background and impairments there were jobs that exist in significant numbers in the national economy that Faulcon can perform. Id. 51–52. Thus, the ALJ found that as of January 5, 2011, Faulcon was not disabled. Id. 52.

4

Faulcon contends that substantial evidence does not support the ALJ's finding that her disability ended as of January 5, 2011. Neither party contests the ALJ's finding that Faulcon was disabled from March 3, 2009, through January 4, 2011. However, there is no presumption of continuing disability. See 42 U.S.C. § 423(f); Rhoten v. Bowen, 854 F.2d 667, 669 (4th Cir. 1988). Instead, the focus becomes whether there was substantial evidence in the record of medical improvement. See 42 U.S.C. § 423(f). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. § 404.1594(b)(1). A finding of medical improvement must be based on improvements in "the symptoms, signs, [or] laboratory findings associated with" the claimant's impairments. Id. If the ALJ finds there has been medical improvement, the ALJ must determine whether the medical improvement resulted in increased residual functional capacity to do work activities. See 20 C.F.R. § 404.1594(b)(3)–(7).

Here, the ALJ found that Faulcon was disabled from March 3, 2009, until January 4, 2011. Tr. 48. However, the ALJ also found that medical improvement related to Faulcon's ability to work had occurred as of January 5, 2011. Id. 49–50. In finding medical improvement, the ALJ cited a host of record evidence. First, the ALJ cited Faulcon's own statement during a January 4, 2011, doctor's appointment that her back, leg, and foot pain were "much better." Id. 49, 586. The ALJ noted that while Faulcon complained during this visit of neck and shoulder pain, "she showed normal strength and deep tendon reflexes in both arms, as well as a full range of motion in her cervical spine." Id. 50, 586. Although the doctor recommended physical therapy and a steroid injection, the record does not indicate that Faulcon pursued either treatment. Id. 50, 586. Accordingly, the ALJ found that Faulcon's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible beginning January 5, 2011, to the extent that they

5

are inconsistent with the residual functional capacity assessment." Id. 50; cf. Johnson, 434 F.3d at 653 (in reviewing an ALJ's decision, the court does not make its own credibility determinations).

The ALJ also relied on the "lack of objective findings commensurate with the nature and extent of the symptoms and limitations she has alleged since January 5, 2011," and the lack of medical treatment Faulcon has sought since that date. Tr. 50. The ALJ noted that Faulcon sought treatment for her severe impairments only two other times besides the January 4, 2011 visit to the doctor. On June 28, 2011, Faulcon called a pain center complaining of back, leg, and foot pain, and the center referred her to her treating physician. Id. 50, 724. On July 14, 2011, Faulcon visited a clinic complaining of headaches, incontinence, and neck pain, but the examination revealed a normal gait and normal strength, muscle tone, and range of motion in all extremities. Id. 50, 726–27. She received treatment for hypertension, allergies, ear infection, and incontinence in this visit, but the physician's assistant took no action with regard to pain treatment or management. Id. 728. Although Faulcon has received other medical treatment since January 4, 2011, such treatment has pertained to unrelated short-term conditions. See, e.g., id. 596, 739–40.

Finally, the ALJ noted that Faulcon testified that she was receiving $300 per week in unemployment benefits. Id. 50, 62–63. In North Carolina, receipt of state or federal unemployment benefits is conditioned on the individual's representation that he or she is not eligible for disability benefits. See N.C. Gen. Stat. § 96-13(a)(4). The ALJ found that her receipt of unemployment benefits "is inconsistent with her claims that she is unable to work." Tr. 50.

The only evidence Faulcon cites in support of her contention that she continued to be disabled by her severe impairments are her own unsubstantiated descriptions of her symptoms during her administrative hearing. Id. 74–77. As discussed, the ALJ found that these descriptions were not credible as of January 5, 2011, and this court does not make its own credibility determinations. See

6

Johnson, 434 F.3d at 653. Moreover, in steps one through four, the claimant bears the burden of production and the risk of non-persuasion. See id.; Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Thus, substantial evidence supports the Commissioner's finding that Faulcon was no longer disabled as of January 5, 2011.

Next, Faulcon asserts that the ALJ erred in finding that she has the residual functional capacity to perform light work as of January 5, 2011. Essentially, residual functional capacity is what a claimant is able to do despite his or her limitations. See 20 C.F.R. § 404.1545(a). The determination of residual functional capacity takes into account the claimant's physical and mental abilities. See 20 C.F.R. § 404.1545(b)–(c). The ALJ found that Faulcon has the residual functional capacity to perform unskilled light work with the additional limitation of being able to alternate between sitting and standing every 30 minutes. Tr. 50. "Light work" is defined as a job involving lifting no more than 20 pounds at a time, a "good deal" of walking or standing, or sitting with "some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Individuals capable of performing light work are also deemed capable of performing sedentary work. Id. Faulcon argues that her physical impairments from foot and lower back pain combined with her low intellectual functioning preclude her from performing even sedentary work.

As discussed, substantial evidence supports the ALJ's finding that Faulcon's pain issues do not preclude all work. Tr. 50–51. Moreover, the ALJ permissibly rejected Faulcon's assertions that her low intellectual functioning preclude employment. Faulcon's IQ has been measured as 64, placing her in the range of mild mental retardation. Id. 624. The ALJ, however, noted that despite her IQ she has been able to work in a number of jobs in the past fifteen years. Id. 49, 65–67, 268. Faulcon only stopped working when she injured her foot. Id. 66. Furthermore, the ALJ cited evidence that Faulcon lives independently and is only mildly limited in her ability to take care of her

7

daily needs. Id. 48–49. Faulcon's ability to work and manage her own affairs despite her low intellectual functioning undermines her argument that her intellectual limitations now preclude all employment. See Hancock, 667 F.3d at 475–76. Thus, substantial evidence supports the ALJ's finding that Faulcon has the residual functional capacity to perform light work with some additional limitations.

III.

In sum, the court GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 28], DENIES Faulcon's motion for judgment on the pleadings [D.E. 26], and AFFIRMS the Commissioner's decision. The clerk shall close the case.

SO ORDERED. This _3_ day of May 2013.

JAMES C. DEVER III
Chief United States District Judge